# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| ELDON BUGG, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:08-4277-CV-C-NKL |
| PEGGY BOOTS, et al., | ) ) ) |
| Defendants. | ) |

**ORDER**

Pro se Plaintiff Eldon Bugg ("Bugg") alleges several claims arising out of a separate lawsuit he filed in Randolph County, Missouri, Circuit Court. He names as Defendants both Peggy Boots ("Boots"), Clerk of the Randolph County, Missouri, Circuit Court, and the Honorable Cynthia Suter ("Suter"), Associate Circuit Judge for the same court. Before the Court is Judge Suter and Boots' Motion to Dismiss [Doc. # 13]. For the following reasons, the Court grants the motion.

**I.    Factual Background**[1]

The facts of this case center on Judge Suter's dismissal of Bugg's Randolph County lawsuit and Boots' handling of the docketing and filing in that lawsuit. In short, on July 31, 2008, Judge Suter entered an order dismissing Bugg's Randolph County lawsuit and Bugg wanted to appeal. For purposes of his appeal, Bugg wanted a copy of a docket sheet with a

---

[1] The Court assumes as true the allegations in Bugg's Complaint which are discussed in this order.

handwritten entry of judgment by Judge Suter; he requested such a docket sheet at the Randolph County court clerk's office. Boots, the clerk of court, refused, though she said she would give Bugg a clerk's certification; she explained that she had issued similar certifications for attorneys filing appeals, and that Judge Suter had asked Boots not to give out copies of handwritten documents. Boots also refused Bugg's demand that she issue a letter explaining why she would not issue a copy of the docket sheet with a handwritten entry of judgment.

Attached to Bugg's Complaint is a copy of the docket sheet from his Randolph County lawsuit. The docket sheet does not reflect the entry of a judgment.[2] The Complaint gives no indication that Bugg ever requested a final judgment from Judge Suter. The last entry on the docket sheet is Judge Suter's July 31, 2008, interlocutory dismissal order. In Missouri, "[a]n interlocutory order is always under the control of the court making it, [and a]t any time before final judgment a court may open, amend, reverse or vacate an interlocutory order." *Cincinnati Indem. Co. v. A & K Constr. Co.*, 542 F.3d 623, 624 n.1 (8th Cir. 2008) (quoting *Woods v. Juvenile Shoe Corp. of Am.*, 361 S.W.2d 694, 695 (Mo. 1962)). Thus, according to Bugg's Complaint, his Randolph County lawsuit is still pending before Judge Suter.

Bugg attempted to file an appeal from Judge Suter's interlocutory dismissal order with the certification document provided by Boots, but the appeal was dismissed. According to a letter from the Missouri Court of Appeals attached to Bugg's Complaint, his appeal was

---

[2] Under Missouri Rule of Civil Procedure 74.01,"A judgment is entered when a writing signed by the judge and denominated a 'judgment' is filed."

dismissed because Judge Suter's dismissal order did not constitute a final, appealable judgment.

Bugg's Complaint alleges that Judge Suter's dismissal order and Boots' refusal to give him the requested (apparently non-existent) documents constitute various violations of his civil rights; Bugg mainly complains that he was deprived of his appeal. He alleges claims under 42 U.S.C. §§ 1983 and 1985 and seeks damages as well as declaratory and injunctive relief. While not entirely clear, it appears that Bugg names both Defendants in their individual and official capacities.[3]

## II.  Discussion

Both Defendants move to dismiss based on *Younger* abstention, immunity (judicial and quasi-judicial), the *Rooker-Feldman* doctrine, and failure to state a claim. On a motion to dismiss a *pro se* complaint, the Court must construe the facts liberally in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). To survive a motion to dismiss, Bugg need only have pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

### A.  Abstention

The Court will abstain from exercising jurisdiction over Bugg's declaratory and injunctive claims. Under *Younger v. Harris*, 401 U.S. 37 (1971), federal courts should

---

[3] The Complaint lists as Defendants "Peggy Boots Individually, and as the Clerk of Randolph County Circuit Court" and "Hon. Cynthia Suter Individually and As Associate Circuit Judge."

3

abstain from exercising jurisdiction in cases where the requested relief would interfere "with pending state proceedings in a way that offends principles of comity and federalism." *Aaron v. Target Corp.*, 357 F.3d 768, 774 (8th Cir. 2004). Federal courts must abstain from hearing cases when (1) there is an ongoing state judicial proceeding which (2) implicates important state interests, and when (3) that proceeding affords an adequate opportunity to raise the federal questions presented." *Cedar Rapids Cell. Tel., L. P. v. Miller*, 280 F.3d 874 (8th Cir. 2002) (citation omitted).

Bugg's claims in this case fall within the purview of *Younger*. First, Bugg's Complaint demonstrates that there is an ongoing state judicial proceeding; although his claims were dismissed, the Complaint indicates that there has been no final judgment. Second, the state proceeding implicates the important state interest of allowing state courts to administer their own cases – to deal with their own court rules and files – without federal court interference.

Third, Bugg's Randolph County lawsuit will address the questions presented here. Though Bugg's claims seek relief under federal statutes, the cornerstone of his Complaint is the Randolph County court's application of state law procedures – which he claims deprived him of his state court right to appeal Judge Suter's dismissal order. The ongoing state court proceedings will impact any claims he may have in this Court: once he requests a final and appealable judgment in his Randolph County lawsuit in accordance with Missouri court rules and procedures, the Randolph County court will issue an appealable judgment, or will deny him such a judgment. Whatever the Randolph County court's response, Bugg may appeal

4

– either from the then-final-and-appealable dismissal order, or from a denial of judgment – through proper Missouri state court procedures.

This would negate Bugg's claims that he has been deprived of his constitutional rights regarding a state court appeal. Abstention is called for "with even more force when abstention might allow the federal court to avoid unnecessary constitutional questions." *Yamaha Motor Corp., U.S.A. v. Stroud*, 179 F.3d 598, 603 (8th Cir. 1999) (finding *Younger* abstention appropriate on § 1983 damages, declaratory, and injunctive claims where the federal claims turned on resolution of state administrative proceedings).

Bugg's claims satisfy the elements of *Younger*. Granting Bugg's requested relief would "offend principles of comity and federalism." *Night Clubs, Inv. v. City of Fort Smith, Ark.*, 163 F.3d 475 (8th Cir. 1998) (finding that *Younger* abstention was appropriate in § 1983 case seeking damages and equitable relief that would interfere with pending state proceedings concerning an application for a business license). The Court declines to exercise jurisdiction over Bugg's injunctive and declaratory claims and dismisses them. *See Yamaha*, 179 F.3d at 603-04 (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996)) (stating that, where *Younger* abstention is appropriate, equitable claims may be dismissed but damages claims should be stayed unless those claims call upon a federal court to declare a state statute unconstitutional).

Applying *Younger* abstention to Bugg's damages claims would mandate staying, rather than dismissing, those claims. *Id.* However, staying Bugg's damages claims would cause needless work and expense for the Court and the parties, as those claims are futile: as

5

discussed below, they are subject to immunity defenses which bar them from proceeding; these defenses will persist after resolution of Bugg's state court proceedings. The *Younger* doctrine allows courts to decline abstention in certain circumstances, as when there is a showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982). Given the futility of Bugg's damages claims, a stay is inappropriate. Therefore, the Court declines to apply *Younger* abstention to Bugg's damages claims. *See Nivens v. Gilchrist*, 444 F.3d 237 (4th Cir. 2006) (in a § 1983 case, affirming dismissal of claims on the basis of (1) *Younger* as to declaratory and injunctive claims and (2) the Eleventh Amendment and prosecutorial immunity as to damages claims); *Nowicki v. Ullsvik*, 69 F.3d 1320, 1323-24 (7th Cir. 1995) (in a § 1983 case, affirming district court's (a) abstaining from exercising jurisdiction over injunctive and declaratory claims based on *Younger* and (b) dismissing of damages claims based on judicial immunity).

### B. Immunity

#### 1. Judicial and Quasi-Judicial Immunity

Judicial immunity and quasi-judicial immunity bar Bugg's damages claims against Defendants in their individual capacities. Judges have absolute immunity from individual-capacity damages suits based on acts they take within their judicial capacities. *Penn v. United States*, 335 F.3d 786, 789 (8th Cir. 2003)*; VanHorn v. Oelschlager*, 502 F.3d 775, 779 (8th Cir. 2007) (indicating that judicial immunity and quasi-judicial immunity are not available for claims against officials in their official capacities). Judicial immunity is "immunity from suit, not just from ultimate assessment of damages" and cannot be "overcome by allegations of bad faith or malice." *Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Duty v. City of Springdale, Ark.*, 42 F.3d 460, 463 (8th Cir. 1994). Judicial immunity does not apply where judges take action in the complete absence of all jurisdiction. *See Martin v. Hendren*, 127 F.3d 720, 722 (8th Cir. 1997).

Bugg argues that Judge Suter acted outside her jurisdiction in interpreting Missouri Court rules and directing Boots not to give Bugg a copy of the handwritten docket entry. In determining whether a judicial act occurs in the complete absence of jurisdiction, "the nature of the function performed, not the particular act itself, controls the . . . inquiry." *Id.* "If judicial immunity means anything, it means that a judge will not be deprived of immunity because the action he took was in error or was in excess of his authority." *Id.* (citations and internal punctuation omitted) (rejecting an argument that a judicial officer's use of excessive force deprived him of immunity). Even if Judge Suter's actions were in error, they were

7

judicial in nature and related to a case over which, as the Complaint indicates, she retained jurisdiction. Under Bugg's own allegations, Judge Suter acted within her jurisdiction as well as her judicial capacity. She is entitled to judicial immunity on Bugg's damages claims against her in her individual capacity.

A similar, quasi-judicial, immunity extends to court officials for conduct which is an "integral part of the judicial process." *Boyer v. County of Washington*, 971 F.2d 100, 102 (8th Cir. 1992) (holding that county clerk was entitled to absolute quasi-judicial immunity for signing and issuing warrant). Quasi-judicial immunity protects court officials from suit for taking action required by court order or a judge's direction. *Robinson v. Freeze*, 15 F.3d 107, 109 (8th Cir. 1994). Bugg has attempted to sue Boots for acts performed in her position as clerk of the Randoph County court, at a judge's direction and as an integral part of the judicial process. She is protected from Bugg's damages claims against her in her individual capacity.

### 2. Eleventh Amendment Immunity

Bugg's damages claims against Defendants in their official capacities are barred by the Eleventh Amendment. "Suits against state officials in their official capacity . . . should be treated as suits against the state." *Hafer v. Melo*, 502 U.S. 21, 25 (1999). Judge Suter is a state court judge; Boots is a state court clerk. The state is immune from Bugg's damages claims under the Eleventh Amendment, and this immunity extends to Defendants. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (cited in *Ventimiglia v. St. Louis C.O.G., Inc.*, No. 4:08CV1199 CDP, 2009 WL 35186, at \*3 (E.D. Mo. Jan. 5, 2009) (noting

that § 1983 claims for damages against state judges were barred by the Eleventh Amendment)); *Stanton v. Johnson*, 13 Fed. Appx. 441 (8th Cir. 2001) (affirming summarily a dismissal of a suit against state court clerks based on sovereign and judicial immunity).[4]

## III. Conclusion

The Court abstains from exercising jurisdiction over Bugg's injunctive and declaratory claims under *Younger*; those claims are dismissed. Bugg's damages claims are dismissed on the bases of judicial, quasi-judicial, and Eleventh Amendment immunity.

Accordingly, it is hereby ORDERED that Defendant's Motion to Dismiss [Doc. # 13] is GRANTED.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: April 1, 2009
Jefferson City, Missouri

---

[4] The Court does not reach Defendants' arguments concerning Bugg's failure to state a claim.